MEREDITH R. DEARBORN (SBN 268312)
mdearborn@paulweiss.com
RANDALL S. LUSKEY (SBN 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: 628-432-5100
Facsimile: 628-232-3101

KRISTINA BUNTING (NY SBN 5510847; *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3503
Facsimile: 212-757-3990

Attorneys for Defendants
COINBASE GLOBAL, INC. and COINBASE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GMO-Z.COM TRUST COMPANY, INC.; COINBASE GLOBAL, INC.; and COINBASE, INC. <br><br> Defendants. | Case No. 3:22-cv-02826-TLT <br><br> **DEFENDANTS COINBASE GLOBAL, INC.'S AND COINBASE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND** <br><br> District Judge Trina L. Thompson |

1

## I.  INTRODUCTION

Defendants Coinbase Global, Inc. and Coinbase Inc. ("Coinbase")[1] respectfully oppose Plaintiffs Hussein Kassfy's and John Brambl's[2] Motion for Leave to Amend (Dkt. 64).  Under the Federal Rules, leave to amend should be freely granted when justice so requires.  FED. R. CIV. P. 15(a)(2).  But here, justice does not require the Court to allow leave to amend a second time.

Plaintiffs have admitted that they wish to use this amendment in an ill-conceived and unmeritorious gambit to avoid arbitration.  Plaintiffs waited to amend their complaint until after Coinbase expended time and resources moving to compel arbitration and to dismiss.  Dkts. 51, 52.  Plaintiffs cite no new facts that were unavailable to them before Coinbase moved to compel arbitration.  And amendment is futile; the proposed Second Amended Complaint (PSAC) (Dkt. 64-2), like the First Amended Complaint (Dkt. 46), still fails to state a cognizable claim against Coinbase.

## II.  STANDARD OF REVIEW

Courts have "particularly broad" discretion to deny leave to amend under Federal Rule of Civil Procedure 15 where the plaintiff has previously amended its complaint.  *Ecological Rts. Found.* v. *Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (citations omitted).  In exercising that discretion, courts assess five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Id.* (citing *United States* v. *Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)); *see also Carvalho* v. *Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (listing similar factors and quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).

## III.  ARGUMENT

This is Plaintiffs' third bite at the apple, a factor weighing in favor of denying leave to amend.  *Ecological Rts. Found.*, 713 F.3d at 520.  Plaintiffs filed their original complaint on May

---

[1] We use the collective term "Coinbase" for readability, but as described more fully in Coinbase's Motion to Dismiss (Dkt. 52 at 9), Coinbase Global, Inc. is not a proper defendant in this case.  Nothing in Plaintiffs' proposed Second Amended Complaint affects this conclusion.

[2] As before, Plaintiff Kenneth Donovan does not allege that he transacted through Coinbase and thus has no claims against Coinbase.  PSAC at ¶ 70.

12, 2022.  Dkt. 1.  Three months later, on August 25, 2022—the date they were directed by the Court, pursuant to procedures set by the Private Securities Litigation Reform Act (PSLRA), to "identify" an "operative" complaint, Dkt. 43 at 3—Plaintiffs filed their first Amended Complaint, which added plaintiff John Brambl as a proposed class representative. *Compare* Dkt. 1 *with* Dkt. 46.[3]  On October 6, 2022, pursuant to the parties' agreement and joint stipulation, Coinbase filed a motion to compel arbitration and, in the alternative, a motion to dismiss.  Dkts. 51, 52.

Plaintiffs first raised their desire to amend a second time in a draft joint case management statement that they sent to Defendants on October 12, two days before it was due to the Court.  *See* Dkt. 60 at 7–8; Dkt. 64-3 at 14–15.  The parties subsequently met and conferred about the proposed amendment, during which Plaintiffs said that they wished to amend principally because they wanted to add a claim under California's Consumer Legal Remedies Act, and they wanted to do so in time to refer to that new claim in opposition to Coinbase's motion to compel arbitration.  *See* Dkt. 64 at 4 (arguing that the addition of the CLRA claim "bolsters an argument that Plaintiffs plan to make in opposition to the pending motions to compel arbitration").

Plaintiffs have now filed their opposition, urging the Court to deny Coinbase's motion to compel arbitration because the arbitration agreement purportedly "allows Coinbase to evade" statutory remedies available under the CLRA and "strips Plaintiffs of their statutory right to prevailing attorneys' fees and costs under the CLRA."  Dkt. 68 at 13–14.  That argument does not justify Plaintiffs' amendment, because it is meritless; it does not supply a valid reason why the arbitration agreement would be unenforceable.  Plaintiffs made the same argument in a separate case that Plaintiffs' counsel has filed against Coinbase.  Dkt. 38 at 15, *Pearl et al.* v. *Coinbase Global, Inc.*, Case No. 22-cv-05361-MMC (N.D. Cal. Oct. 17, 2022).  As Coinbase explained in *Pearl*, the arbitration agreement itself does not prohibit an arbitrator from awarding statutory

---

[3] Plaintiffs claim that this amendment was done with Defendants' consent or with leave under Federal Rule of Civil Procedure 15(a)(2), rather than being their one amendment as of right under Rule 15(a)(1).  Dkt. 64 at 1–2.  Though the Court need not reach this issue to deny leave to amend, Plaintiffs are incorrect.  Under the terms of the parties' stipulation, Plaintiffs were directed to "identify" an "operative" complaint by the August 25 deadline.  *See* Dkt. 43.  They could have pointed to their original complaint on that date (Dkt. 1), but they instead chose to use their one amendment as of right to add Brambl as a proposed lead plaintiff.  Dkt. 46.

damages in the form of fees and costs. Dkt. 40 at 14, *Pearl*, Case No. 22-cv-05361-MMC (N.D. Cal. Nov. 7, 2022). As Plaintiffs note, the Coinbase User Agreement does contain a limitation of liability provision that excludes certain forms of damages, but that provision is not located within the arbitration agreement and applies whether a claim is in court or in arbitration. It thus would not show that the arbitration agreement "***standing alone***, is unenforceable [] for reasons ***independent*** of any reasons the remainder of the contract might be invalid." *See Bridge Fund Cap. Corp.* v. *Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (emphasis added). Plaintiffs' proposed CLRA claim thus does not "bolster" the arguments in Plaintiffs' opposition to Coinbase's motion to compel arbitration in any material way. An amendment that will have no impact on the parties' threshold arbitrability dispute is not the sort of amendment that justice requires.[4]

The remaining factors here cut against allowing amendment. ***First***, as to undue delay, none of the new amendments to the PSAC—the new CLRA claim, or the other edits Plaintiffs appear to have made in response to Defendants' motions to dismiss—rest on any newly discovered facts. In evaluating undue delay, courts inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp.* v. *Dialysist W., Inc*., 465 F.3d 946, 953 (9th Cir. 2006) (citations omitted). All of the facts and legal theories Plaintiffs now wish to assert have been available to them for the entirety of the six months that this lawsuit has been pending. Plaintiffs do not argue otherwise. Dkt. 64 at 4.

***Second***, Coinbase would be prejudiced by allowing amendment. Coinbase has invested significant resources in moving to dismiss Plaintiffs' claims once already; allowing amendment would simply require Coinbase to expend additional resources in moving to dismiss again. While the case is in its early stages, it is prejudicial to require an opponent to incur additional litigation costs "where the amendment results in additional costs that could have easily been avoided had the

---

[4] In any event, the limitation of liability provision in the User Agreement states that it does not apply where damages are the result of fraud or willful misconduct, and does not apply where state law prohibits the exclusion of certain types of damages. Dkt. 68-2 at 19–20. The CLRA claim in Plaintiffs' PSAC charges that Coinbase "knew, or should have known, that their representations and advertisements about the nature and qualities of GYEN were false or misleading and were likely to deceive a reasonable consumer." Dkt. 64-2 at ¶ 169. Plaintiffs do not explain why the limitation of liability provision would, by its own terms, have any effect if they succeed in proving that Coinbase knowingly made false statements about GYEN designed to deceive customers.

1    proposed amendments been included with the original pleading," as is the case here.  *Gillette* v.

2    *Uber Techs.*, No. C-14-5241 EMC, 2015 WL 4931793, at *4 (N.D. Cal. Aug. 18, 2015) (citing

3    *AmerisourceBergen*, 465 F.3d at 953); *see also Fresno Unified Sch. Dist.* v. *K.U. ex rel. A.D.U.*,

4    980 F. Supp. 2d 1160, 1177 (C.D. Cal. 2013) (same).  At the very least, the Court should require

5    Plaintiffs to pay Coinbase's reasonable attorney fees and costs in moving to dismiss a second time.

6    *Gen. Signal Corp.* v. *MCI Telecomms. Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) ("[A] district

7    court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to

8    amend in order to compensate the opposing party for additional costs incurred because the original

9    pleading was faulty.").[5]  Coinbase's prejudice is particularly significant when, as here, the parties

10   have an arbitration agreement and should not be in court in the first place.

11         ***Third***, amendment would be futile.  "The proper test to be applied when determining the

12   legal sufficiency of a proposed amendment is identical to the one used when considering the

13   sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke* v. *King*, 644 F.3d 776, 788

14   n.12 (9th Cir. 2011), *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012) (internal quotations and

15   citations omitted).  Plaintiffs argue that the amendment is not futile because their proposed revisions

16   address issues raised in Coinbase's motion to dismiss. Dkt. 64 at 4–5.  But none of Plaintiffs'

17   proposed changes actually cure the fundamental deficiencies that Coinbase identified. Dkt. 52.  For

18   example, Plaintiffs have not added any facts that would allow them to avoid the economic loss rule,

19   a bedrock principle of California law that bars all of Plaintiffs' negligence-based claims, nor have

20   they cured the other deficiencies barring relief in tort.  Dkt. 52 at 9–17; *Pegasus Trucking, LLC* v.

21   *Asset Redeployment Grp., Inc*., No. 19-cv-10339-SPG-JEM, 2021 WL 1234879, at *7 (C.D. Cal.

22   Feb. 16, 2021) ("Plaintiffs cite no authority for the proposition that there is an 'emotional distress'

23   exception to the economic loss rule.").  Moreover, the PSAC's amendments <u>confirm</u> the strength

24   of Coinbase's previous arguments that none of the Plaintiffs relied on any statement that Coinbase

25   made, because Plaintiffs tacitly admit they never even saw any representations about GYEN on

26

27   _____
     [5] Plaintiffs advance an argument that forcing Coinbase to file a new motion to dismiss is not
     prejudicial because an "amendment" is "exactly what would happen … if their motions [to dismiss]
28   were granted." Dkt. 64 at 3.  This argument assumes its conclusion, which is that leave to amend
     should be granted based on Plaintiffs' identified changes at all.

1    Coinbase's website.   PSAC ¶ 72; Dkt. 52 at 18–21.   And Plaintiffs' additional allegations

2    concerning Coinbase's business still fail to establish that Coinbase passed title or solicited

3    purchases of GYEN, as required to assert Securities Act claims. Dkt. 52 at 23–24; *Pinter* v. *Dahl*,

4    486 U.S. 622, 643–44 (1988).   Other grounds for dismissal are untouched by Plaintiffs' proposed

5    edits.

6          Plaintiffs' new CLRA and False Advertising Law ("FAL") claims fare no better.  In the first

7    instance, neither GYEN, nor services related to GYEN, fall within the ambit of the CLRA.  *See*

8    *Suski* v. *Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL 3974259, at *7–8 (N.D. Cal. Aug. 31,

9    2022) (finding that digital assets and the services that Coinbase provided are not "goods" or

10   "services" under the CLRA).  And the gravamen of the CLRA and FAL claims are the same flawed

11   alleged misrepresentations and omissions that underpin Plaintiffs' defective tort claims, and should

12   be dismissed for many of the same reasons.  *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1126 (9th

13   Cir. 2009) (dismissing CLRA claim when plaintiff did not "specify when he was exposed to [the

14   alleged false statements] or which ones he found material"); *In re Sony Gaming Networks &*

15   *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967–68 (S.D. Cal. 2012) (dismissing FAL

16   claim for failure to allege an actionable misrepresentation).   Finally, because the "basis for

17   Plaintiffs' motion for leave to amend is their request to add allegations to their complaint that

18   correspond with the new arguments they" wish to raise in their briefing on the motion to compel

19   arbitration, and the CLRA does not actually add any meritorious argument to avoid arbitration, as

20   explained above, leave to amend would be futile.  *Thaw* v. *Lynch*, No. 2:15-CV-01703 JWS, 2016

21   WL 1045527, at *7 (D. Ariz. Mar. 16, 2016), *aff'd sub nom. Thaw* v. *Sessions*, 712 F. App'x 604

22   (9th Cir. 2017).

23   **IV.    CONCLUSION**

24         Coinbase recognizes the "extreme liberality" of the standard governing amendment in this

25   Circuit.  *DCD Programs, Ltd.* v. *Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Microsoft Corp.* v.

26   *Hon Hai Precision Indus. Co., Ltd.*, No. 19-cv-01279-LHK, 2020 WL 836712, at *15, *14 (N.D.

27   Cal. Feb. 20, 2020) (assessing futility on a complete 12(b)(6) briefing record).   Coinbase

28   nevertheless respectfully submits that leave to amend is inappropriate here.  If the Court holds

otherwise, then Coinbase will more comprehensively explain why Plaintiffs' claims fail as a matter of law on full briefing in its renewed motion to dismiss, according to the new schedule agreed by the parties and set by the Court.  That schedule will (a) allow the Court to rule on Coinbase's motion to compel arbitration before requiring Coinbase to re-file its 12(b)(6) motion and (b) allow Coinbase to develop more fully all of the many reasons why Plaintiffs' PSAC fails to state a claim upon which relief can be granted.  *See* Dkt. 65, 66.

Dated: November 29, 2022

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Meredith R. Dearborn*

Meredith R. Dearborn
Randall S. Luskey

Attorneys for Defendants
COINBASE GLOBAL, INC. AND
COINBASE, INC.